UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BENJAMIN T. PERSHOUSE, Individually
and On Behalf of All Others Similarly
Situated,

                        Plaintiff,

v.

L.L. BEAN INC.,

                        Defendant.

Civil Action No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Benjamin T. Pershouse ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge as to facts pertaining to himself and on information and belief as to all other matters, by and through his undersigned counsel, brings this class action complaint against defendant L.L. Bean, Inc. ("L.L. Bean" or "Defendant").

## NATURE OF THE ACTION

1.     Since 1912, L.L. Bean has sought and earned the trust and respect of its customers by providing a "100% Satisfaction Guarantee," pursuant to which it promised to exchange or replace items if a customer determined that the item was not "completely satisfactory" (the "Guarantee"). This highly publicized and widely-known Guarantee has, for decades, been part of the benefit of the bargain for purchasers of L.L. Bean products.  L.L. Bean's Guarantee has become almost entirely intertwined with the L.L. Bean brand.

2.     On February 9, 2018, L.L. Bean rescinded the Guarantee and announced significant limitations.

1

3.      In a February 9, 2018 letter from L.L. Bean Executive Chairman Shawn O. Gorman, posted on L.L. Bean's Facebook page (and e-mailed to some previous customers including Plaintiff), L.L. Bean announced it had "updated" its Guarantee. In a marked shift from the decades-old Guarantee, the new terms require proof of purchase for all returns, in addition to excluding from coverage completely returns where L.L. Bean determines certain "Special Conditions" apply, including products damaged by "misuse," "improper care," and "excessive wear and tear." The Guarantee of "complete satisfaction," bargained and paid for by loyal customers for years, has been suddenly and unilaterally withdrawn by L.L. Bean.

4.      As a result of L.L. Bean's deceptive and unfair repudiation of its Guarantee and violation of the Magnuson Moss Warranty Act and other laws, Plaintiff and all other L.L. Bean customers who bought products before February 9, 2018, did not receive what they bargained for.

5.      Plaintiff brings this action on behalf of himself and all others similarly situated, to recover the lost benefit of the bargain attributable to L.L. Bean's repudiation of its warranty, or in the alternative, to require L.L. Bean to honor the terms of its warranty that was the basis of the bargain, and a declaration that (1) L.L. Bean's February 9, 2018 announcement that it would no longer honor the Guarantee with no end date or questions asked constitutes a violation of the law and a breach of warranty; (2) L.L. Bean must continue to honor the warranty with no end date and no questions asked as to goods purchased prior to February 9, 2018; and (3) L.L. Bean must provide the best notice practicable under the circumstances designed to reach past and future L.L. Bean customers, and corrective advertising regarding the changes to its warranty.

## JURISDICTION AND VENUE

6.      This Court has original subject matter jurisdiction over the case under 28 U.S.C. § 1332(d) because the case is brought as a class action under Fed. R. Civ. P. 23, at least one member

of the proposed Classes (defined below) is of diverse citizenship from L.L. Bean, the proposed Classes include more than 100 members, and the aggregate amount in controversy exceeds five million dollars, excluding interest and costs.

7.      Venue is proper in this District under 28 U.S.C. § 1391 because L.L. Bean engaged in substantial conduct relevant to Plaintiff's claims within this District, and has caused harm to members of the proposed Classes residing within this District.

## PARTIES

8.      Plaintiff Benjamin T. Pershouse ("Pershouse" or "Plaintiff") is a resident of Woburn, Massachusetts. Mr. Pershouse purchased a pair of slippers from L.L. Bean's website in November of 2012. After a few years of indoor use, the rubber soles of the slippers began to flake off in large chunks. On March 8, 2018, after L.L. Bean rescinded its Guarantee, Mr. Pershouse presented the slippers along with proof of purchase and attempted to return them at the L.L. Bean store in Burlington, Massachusetts. The manager of the store refused to accept the return on the basis that the slippers were, in her erroneous estimation, "not defective."

9.      The L.L. Bean Guarantee, which would allow him to return the slippers at any time if he was not completely satisfied, was part of the basis of Plaintiff's bargain with L.L. Bean. Given L.L. Bean's sudden reversal of its long-standing Guarantee, however, Mr. Pershouse has been injured and has been deprived of the benefit that formed a basis of the bargain between him and L.L. Bean.

10.      Defendant L.L. Bean is a Maine corporation headquartered in Freeport, Maine.

## FACTUAL ALLEGATIONS

11.      L.L. Bean was founded in 1912 by Leon Leonwood (L.L.) Bean and, under the leadership of his grandson, Leon Gorman, was eventually transformed into a globally-recognized

brand of outdoor clothing and equipment. L.L. Bean opened its first retail store in Freeport, Maine in 1917 and now operates at least 30 domestic retail stores outside of Maine—as far south as Virginia and as far west as Colorado—as well as 10 outlets. L.L. Bean opened its first international retail store in Tokyo in 1992, and currently operates approximately 25 stores and outlets in Japan. In 1995, L.L. Bean launched its website, which serves over 200 countries and territories. L.L. Bean also mails catalogs to customers in every state and over 150 countries.

12.     L.L. Bean has long maintained a reputation for outstanding customer service, both among its customers and throughout the retail industry. This positive reputation (and consequent revenue) was largely founded on L.L. Bean's comprehensive Guarantee that, until recently, read as follows:

> **Easy Returns & Exchanges**
> We make pieces that last, and if they don't, we want to know about it. L.L. himself always said that he "didn't consider a sale complete until goods are worn out and the customer still satisfied." Our guarantee is a handshake – a promise that we'll be fair to each other. So if something's not working or fitting or standing up to its task or lasting as long as you think it should, we'll take it back. We want to make sure we keep our guarantee the way it's always been for over a century.[1]

13.     Commenting on the Guarantee on February 10, 2017, an L.L. Bean spokesperson told *Business Insider* that the "vast majority" of customers adhere to the original intent of the Guarantee:

> Our guarantee is not a liability, but rather a customer service asset – an unacknowledged agreement between us and the customer, that always puts the customer first and relies on the goodwill of our customers to honor the original intent of the guarantee.[2]

---

[1] This quote has been copied from an Internet archive of L.L. Bean's website as it appeared in November 2016. *See* https://web.archive.org/web/20161128235134/https://www.llbean.com/llb/shop/510624?page=returns-and-exchanges (last visited Feb. 27, 2018).
[2] Dennis Green, *L.L. Bean is considering dropping its legendary return policy because of 'fraudulent returns'*, Business Insider (Feb. 10, 2017), available at

14.     In addition to serving as a "customer service asset," the Guarantee provided L.L.

Bean with a tremendous amount of marketing material, both in-store[3] and on its website.[4]



---

http://www.businessinsider.com/ll-bean-is-considering-dropping-its-return-policy-2017-2 (last
visited Feb. 27, 2018).
[3] *See, e.g.,* Anna Maconachy, *Photos: L.L. Bean Opens in Columbus*, Columbus Underground
(Nov. 20, 2015), http://www.columbusunderground.com/l-l-bean-columbus-am1 (last visited Feb.
27, 2018).
[4] *See, e.g.,* screenshot of L.L. Bean return policy, as of December 2017, available at
https://web.archive.org/web/20130516210231/http://www.llbean.com:80/customerService/about
LLBean/guaranteed_popup.html (last visited Feb. 27, 2018).



15.     For years, L.L. Bean catalogs also proudly touted the L.L. Bean's purportedly "rock-solid" 100% Satisfaction Guarantee:



16.    The cover of the Christmas 2013 catalog, for example, promised that the 100%

satisfaction Guarantee had "No Conditions" and "No End Date."



17.     The Guarantee also implicitly and explicitly represented to customers that L.L. Bean's products were well-made and remarkably long-lasting.



18.     The Spring 2015 issue of *L.L. Bean Fishing* promised: "At L.L. Bean, your satisfaction doesn't have a time limit."



19.     On February 9, 2018, however, time suddenly ran out on L.L. Bean's promise of

100% satisfaction. In a statement posted on the L.L. Bean Facebook page (and e-mailed to some

customers including Plaintiff), L.L. Bean's Executive Chairman announced that, effective immediately, "[c]ustomers will have one year after purchasing an item to return it, accompanied by proof of purchase."



A Letter to Our Customers,

Since 1912, our mission has been to sell high-quality products that inspire and enable people to enjoy the outdoors. Our commitment to customer service has earned us your trust and respect, as has our guarantee, which ensures that we stand behind everything we sell.

Increasingly, a small, but growing number of customers has been interpreting our guarantee well beyond its original intent. Some view it as a lifetime product replacement program, expecting refunds for heavily worn products used over many years. Others seek refunds for products that have been purchased through third parties, such as at yard sales.

Based on these experiences, we have updated our policy. Customers will have one year after purchasing an item to return it, accompanied by proof of purchase. After one year, we will work with our customers to reach a fair solution if a product is defective in any way.

This update adds clarity to our policy and will only affect a small percentage of returns. It will also ensure we can continue to honor one of the best guarantees in retail, with no impact for the vast majority of our customers. To learn more, please view our full return policy at llbean.com.

L.L.Bean has stood for quality, service, trust, and getting people outdoors ever since my great-grandfather founded our company over 100 years ago - and that will never change. Thank you for being a loyal customer and we look forward to continuing to inspire and enable you to Be an Outsider.

Sincerely,
Shawn O. Gorman
L.L.Bean Executive Chairman

8.6K Likes   3.5K Comments   2.2K Shares

20.     The return policy on the L.L. Bean's website was then changed to read:

If you are not 100% satisfied with one of our products, you may return it within one year of purchase for a refund. After one year, we will consider any items for return that are defective due to materials or craftsmanship.[5]

We require proof of purchase to honor a refund or exchange. If you provide us your information when you check out, we will typically have a record of your purchase. Otherwise, we require a physical receipt.

Please include your proof of purchase with the products you wish to return or exchange and bring it with you to any of our stores, or include it in your package of returned item(s). We will reimburse the original purchase price to either your original method of payment or as a merchandise credit.

**Gift Returns**

We are happy to accept gift returns within one year of purchase when you provide proof of purchase (i.e. a gift receipt), in which case a merchandise credit will be issued for the original selling price. If you don't have a gift receipt, we will still accept your return if the item is unused and unworn with the original packaging, and you will receive a merchandise credit for the last known selling price.

**Special Conditions**

To protect all our customers and make sure that we handle every return or exchange with reasonable fairness, we cannot accept a return or exchange (even within one year of purchase) in certain situations, including:

- Products damaged by misuse, abuse, improper care or negligence, or accidents (including pet damage)
- Products showing excessive wear and tear
- Products lost or damaged due to fire, flood, or natural disaster
- Products with a missing label or label that has been defaced
- Products returned for personal reasons unrelated to product performance or satisfaction
- Products that have been soiled or contaminated, until they have been properly cleaned
- Returns on ammunition either in our stores or through the mail
- On rare occasions, past habitual abuse of our Return Policy

21.    The dramatic change in the Guarantee has caused an outcry among the L.L. Bean's

customers, with many angrily arguing that the changes are too restrictive and others declaring that

they will no longer shop at L.L. Bean.

---

[5] L.L. Bean Home Page, https://www.llbean.com/llb/shop/513705?nav=ftlink-hp (last visited Feb. 27, 2018).

22.     Customers who have had warranty returns of purchases made prior to February 9, 2018, improperly denied by L.L. Bean have taken to social media to express their displeasure:



I was just denied my return of the same storm chasers boots on the phone with the manager at the danbury fair ct location they didn't even see the product they looked up my information & because I returned them a few times before for the same issue they refuse to exchange them out for a better quality boot. they are supposed to be water proof but completely soak my socks I have 2 pairs. They didn't even look at the boots in person. The manager was was mean & telling as of yesterday the new policy took affect & there is nothing we can do if I came thursday they would've replaced them!! What kind of company is LL Bean to treat ppl this way & They clearly stated that after 1 year they would still accept defective items But their associates clearly don't understand that!!! I WILL NEVER GO BACK TO LL BEAN AGAIN!!!!!!! I hope they go outta business!!!!!!!

Like · Reply · 6d

· Feb 12                                         ⌄

Replying to @LLBean

Kiddo's 1 year old coat zipper broke literally the day before the policy changed...store can't find the record under our names and said they can't look up through the credit card. She talked to me like I was a liar, and I cried in the car for 10 min. This was a ton of $ for us 😞



Q 1            ⇄            ♡            ✉

14

· 12m        ⌄

Saved this thing for more than year and for
what??? A lady to tell me they can't replace my
moccasins that HAVE A TEAR IN THE SEAM.
@LLBean



### Guaranteed. You Have Our Word.®

Our products are guaranteed to give 100% satisfaction
in every way.  Return anything purchased from us at any
time if it proves otherwise.  We do not want you to have
anything from L.L. Bean that is not completely satisfactory.

◯          ⇄ 1          ♡ 1          ✉

‹          Monday at 10:02 AM · 🌐          •••

Dear **L.L.Bean** it has been nice shopping with you all
these 35+ years.  I've enjoyed over paying for kids
clothing and spending lots on money (like lots!!) with
you annually to outfit all my kids and outdoor gear.
However now that you told me that my $170 kids
jacket purchased 2 months ago didn't hold up
because "something happened to it" when it was
clearly a inferior product that ripped without any signs
of damage/stress/abrasion or abuse, I'm calling you
out.

Oh and when I politely asked you to look at the jacket
because kids accidents don't happen on patterns that
follow the fabric weak point. (Ya know there is this
thing called physics and science.....) you then
shockingly reply to me that it must have been
something my 7 year old kid cut at school with an
exacto knife.....really Beans, really!!!!  Did you just
insult me and my child??  Check my E records, do
those $ metrics look like I'm a WT yard sale
returner???  Let me school you on fabrics, those are
two exactly similar right angle shapes that no way
resemble kiddo abuse....thats poor fabric failing. WTF

I say to you two words.   AMAZON PRIME!!   Been nice
knowing you Beans, I will spent my money elsewhere.
Sad!!!



2/21/2018

Levie Y.

■ **Negative**

**Review**

"Ll bean integrity has died" I bought a pair of boots from LL Bean. I hardly wore them and the soles literaally fell off. I called and they said they could mail them back and they would return them. more than a month later someone contacted me and said they couldn't find any record of my purchase and that they would not repair them. Even though they had an unconditional satisfaction guarantee when I bought them guarantee when I bought them, they tried to say that because they had decided to do away with that and said so in their newest catalog they didn't have to honor that. They then tried to tell me that it was actually 'ordinary wear and tear" the boots were hardly used, the soles were almost new! If this is representative of LL Beans standard of quality and integrity, I WILL NEVER DO BUISNESS WITH THEM AGAIN !!! and I would recommend to anyone considering buying Bean products that they shop somewhere else as well. I was a loyal LL Bean customer for over 40 years and I am sad to loose this option for quality products and company integrity has died.

Was this review helpful?   ○Yes   ○No

[1] person found this review helpful

2/18/2018

Mark S.

■ **Negative**

**Review**

Disappointed and furious that LL Beans is retroactively applying their new return policy; this is simply dishonest. Recently hassled at MA store during a return and told that all returns would be evaluated on a case by case basis; even those purchased under previous 100% satisfaction guarentee and with receipt. What to go LL!

Was this review helpful?   ○Yes   ○No

[2] people found this review helpful

17

 **L.L.Bean** ✓ We will be happy to accept a return of any item purchased from us within one year with proof of purchase that does not meet any of the special conditions of our guarantee. These can be viewed here: www.llbean.com/guarantee ^ec

Like · Reply · 1d                                                                  1

 **Michelle Gullage** I attempted to return a jacket I purchased in 2016-17 with a DEFECTIVE zipper (this was confirmed by multiple store employees) and was told without a receipt I had nothing. I was told this by multiple employees in the Burlington VT store and the two calls I placed to customer service. One CS agent even said that she was sorry, that it was tough luck and she suggest I keep my receipts for further purchases. I am truly disappointed. I switched to Ll bean decades ago from a high profile outdoor retailer...purchased outdoor gear, clothing, jammies, etc for 10 years almost exclusively for a family of 4 and recommended LL bean to every family that entered my Outdoor Kindergarten class. It's disappointing and sad to say you stand behind defects but then not to back that up. I will never buy Bean again and will not recommend it as I once did....

Like · Reply · 2h

 **Christopher Saraceno** I was just denied my return of the same storm chasers boots on the phone with the manager at the danbury fair ct location they didn't even see the product they looked up my information & because I returned them a few times before for the same issue they refuse to exchange them out for a better quality boot. they are supposed to be water proof but completely soak my socks I have 2 pairs. They didn't even look at the boots in person. The manager was was mean & telling as of yesterday the new policy took affect & there is nothing we can do if I came thursday they would've replaced them!! What kind of company is LL Bean to treat ppl this way & They clearly stated that after 1 year they would still accept defective items But their associates clearly don't understand that!!! I WILL NEVER GO BACK TO LL BEAN AGAIN!!!!!!! I hope they go outta business!!!!!!!

Like · Reply · 6d



23.     On April 5, 2018, nearly two months after L.L. Bean rescinded its 100% Guarantee and one day before L.L. Bean was required to respond to a lawsuit filed against it in the Northern District of Illinois for the repudiation of its 100% Satisfaction Guarantee, L.L. Bean modified its website to state, for the first time "Please note that products purchased before February 9, 2018, are not subject to this one-year time limit." L.L. Bean attached a printout of its newly modified website to the motion to dismiss it filed in that case, failed to disclose that the modifications—which included the addition of the only material portion of the document— were made the preceding day, concealed the portion of the web page pertaining to the new "Special Conditions," and requested judicial notice be taken of that page.[6]

---

[6] *See Bondi v. L.L. Bean, Inc.*, 18 CV 1101 (N.D. Ill.), ECF No. 18.

24.    L.L. Bean rescinded its 100% Satisfaction Guarantee for purchases made prior to February 9, 2018, has denied proper returns in retail outlets across the country on that basis, as with Plaintiff and many others, and has done all it can to attempt to obscure this conduct from the public.

25.    Plaintiff and the members of the Classes did not receive that which was promised and represented to them. Unbeknownst to Plaintiff and the other Class members, rather than purchasing products accompanied by a 100% Satisfaction Guarantee, they were purchasing products that would become subject to an exceptionally limited warranty, for which proof of purchase was required. Accordingly, because Plaintiff and the other Class members did not receive the benefit of the bargain, Plaintiff and the Class members overpaid for the products they purchased.

## CLASS ALLEGATIONS

26.    Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), on behalf of a class defined as follows (sometimes referred to as the "Nationwide Class"):

> All persons in the United States and its territories who purchased, other than for resale, products from L.L. Bean prior to February 9, 2018.

Excluded from the Nationwide Class are: (i) L.L. Bean and its officers and directors, agents, affiliates, subsidiaries, and authorized distributors and dealers; (ii) all Nationwide Class members that timely and validly request exclusion from the Nationwide Class; and (iii) the Judge presiding over this action.

27.    Alternatively, Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of the following subclass (sometimes referred to as the "Massachusetts Subclass"):

All persons in the Commonwealth of Massachusetts who purchased, other than for resale, products from L.L. Bean prior to February 9, 2018.

Excluded from the Massachusetts Subclass are: (i) L.L. Bean and its officers and directors, agents, affiliates, subsidiaries, and authorized distributors and dealers; (ii) all Massachusetts Subclass members that timely and validly request exclusion from the Massachusetts Subclass; and (iii) the Judge presiding over this action. The Nationwide Class and the Massachusetts Subclass are sometimes collectively referred to as the "Classes."

28.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

29.     The members of the Classes are so numerous that joinder of the members of the Classes would be impracticable. On information and belief, the Nationwide Class numbers in the tens of thousands while the Massachusetts Subclass numbers in the thousands.

30.     Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individuals. Such common questions of law or fact include, *inter alia*:

A.     Whether L.L. Bean engaged in the conduct alleged;

B.     Whether L.L. Bean breached its contracts with Plaintiff and members of the Classes;

C.     Whether L.L. Bean's conduct violated Massachusetts General Laws ("M.G.L."), Chapter 93A;

D.     Whether Plaintiff and members of the Classes have been damaged and, if so, the measure of such damages;

E.     Whether L.L. Bean unjustly retained a benefit conferred by Plaintiff and the members of the Classes;

F.     Whether Defendant's conduct violated the Magnuson Moss Warranty Act;

and

G. Whether Plaintiff and members of the Classes are entitled to equitable relief, including, but not limited to, a constructive trust, restitution, declaratory, and injunctive relief.

31. Plaintiff's claims are typical of the claims of the Classes because, among other things, Plaintiff and the Classes were injured through the substantially uniform misconduct described above. Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Classes.

32. Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the members of the Classes he seeks to represent; he has retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiff intends to prosecute this action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiff and his counsel.

33. A class action is also warranted under Fed. R. Civ. P. 23(b)(2), because L.L. Bean has acted or refused to act on grounds that apply generally to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Classes as a whole. L.L. Bean has directed and continues to direct its conduct to all consumers in a uniform manner. Therefore, injunctive relief on a class-wide basis is necessary to remedy continuing harms to Plaintiff and the members of the Classes caused by L.L. Bean's continuing misconduct.

34. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other detriment suffered by Plaintiff and the members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against L.L. Bean, so it would be impracticable for

members of the Classes to individually seek redress for L.L. Bean's wrongful conduct. Even if members of the Classes could afford individual litigation, the court system should not be required to undertake such an unnecessary burden. Individualized litigation would also create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

### COUNT I
**Breach of Contract**
**(On Behalf of the Nationwide Class)**

35.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 34 as if fully set forth herein.

36.     Each and every sale of an L.L. Bean product, until February 9, 2018, included the Guarantee and created a contract between L.L. Bean and the purchaser of the product, including Plaintiff.

37.     L.L. Bean breached these contracts by unilaterally rescinding the Guarantee promised to and bargained for by Plaintiff and its customers in exchange for money paid to L.L. Bean for each and every product purchased.

38.     As a direct and proximate result of L.L. Bean's breach of contract, Plaintiff and the Nationwide Class have been damaged in an amount to be proven at trial.

**COUNT II**
**Unjust Enrichment**
**(On Behalf of the Nationwide Class)**

39.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 34 as if fully set forth herein.

40.     L.L. Bean has been unjustly enriched to Plaintiff's and the Nationwide Class members' detriment as a result of L.L. Bean's unlawful and wrongful retention of money conferred by Plaintiff and the Nationwide Class members who were unaware that L.L. Bean would soon refuse to honor its longstanding Guarantee, such that L.L. Bean's retention of their money would be inequitable.

41.     L.L. Bean's unlawful and wrongful acts, including breaching its written and express warranties, as alleged above, enabled L.L. Bean to unlawfully receive monies it would not have otherwise obtained.

42.     Plaintiff and the Nationwide Class members have conferred benefits on L.L. Bean, which L.L. Bean has knowingly accepted and retained.

43.     L.L. Bean's retention of the benefits conferred by Plaintiff and the Nationwide Class members would be against fundamental principles of justice, equity, and good conscience.

44.     Plaintiff and the Nationwide Class members seek to disgorge L.L. Bean's unlawfully retained profits and other benefits resulting from its unlawful conduct, and seek restitution and rescission for the benefit of Plaintiff and the Nationwide Class members.

45.     Plaintiff and the Nationwide Class members are entitled to the imposition of a constructive trust upon L.L. Bean, such that its unjustly retained profits and other benefits are distributed equitably by the Court to and for the benefit of Plaintiff and the Nationwide Class members.

## COUNT III
### Violation of Massachusetts General Laws Chapter 93A
### (On Behalf of the Massachusetts Subclass)

46.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 34 as if fully set forth herein.

47.     M.G.L., c. 93A prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." M. G. L. c. 93A, § 2.

48.     L.L. Bean, Plaintiff, and class members are "persons" within the meaning of M. G. L., c. 93A, § 1(a).

49.     L.L. Bean engaged in "trade" or "commerce" within the meaning of M. G. L., c. 93A, § 1(b).

50.     In the course of L.L. Bean's business, it deceived consumers by suddenly eliminating its Guarantee. L.L. Bean compounded the deception by continuing to tout its "100% Satisfaction Guarantee," and by continuously claiming that its products are "guaranteed to last."

51.     This conduct constitutes unfair methods of competition and unfair or deceptive acts and practices in the conduct of trade or commerce, in violation of M.G.L., c. 93A, § 2.  In addition, Defendant's conduct is in violation of at least the following regulations promulgated by the Massachusetts Attorney General under c. 93A:

      a.  940 C.M.R., § 3.02 (prohibiting, among other things, statements or illustrations used in advertisements which create a false impression of the grade, quality, value, or usability of the product offered);

      b.  940 C.M.R., § 3.05(1) (prohibiting claims or representations "made by any means concerning a product which, directly, or by implication, or by failure to adequately

disclose additional relevant information, has the capacity or tendency or effect of deceiving buyers or prospective buyers in any material respect");

c.   940 C.M.R., § 3.05(2) (prohibiting the use of any advertisement "which would mislead or tend to mislead buyers or prospective buyers, through pictorial representations or in any other manner, as to the product being offered for sale");

d.   940 C.M.R., § 3.08(2) (providing that it "shall be an unfair and deceptive act or practice to fail to perform or fulfill any promises or obligations arising under a warranty"); and

e.    940 C.M.R., § 3.16(2) (providing that it is a violation of c. 93A, § 2 to "fail to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer to enter into the transaction").

52.   As stated above, the Guarantee was part of the basis of the bargain between Plaintiff and Massachusetts Subclass members and L.L. Bean in each purchase of an L.L. Bean product prior to February 9, 2018.  Stated another way, the Guarantee comprised part of the value of each L.L. Bean product purchased prior to L.L. Bean's repudiation of the Guarantee.

53.   Because of L.L. Bean's unfair and deceptive repudiation of the Guarantee, Plaintiff and Massachusetts Subclass members did not receive what they bargained for, and they overpaid for the L.L. Bean products they purchased prior to February 9, 2018.

54.   As a direct and proximate result of L.L. Bean's unfair and deceptive conduct, in violation of M.G.L., c. 93A, §2, Plaintiff and the other members of the Massachusetts Subclass have suffered injury-in-fact and actual damages caused by L.L. Bean's unfair and deceptive acts. Had they been aware that the Guarantee would be eliminated, Plaintiff and the other members of the Massachusetts Subclass either would have paid less for the products they purchased from L.L.

Bean or they would not have purchased those products at all. Accordingly, as a result of L.L. Bean's misconduct, Plaintiff and the other members of the Massachusetts Subclass did not receive the benefit of their bargain.

55.     Plaintiff and Massachusetts Subclass members also suffered injury in the form of the additional profits made by L.L. Bean as a result of its repudiation of the Guarantee.

56.     Pursuant to M. G. L. c. 93A, § 9, Plaintiff seeks monetary relief measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each violation. Because L.L. Bean's conduct was committed willfully and knowingly, Plaintiff is entitled to recover up to three times his actual damages, but no less than two times actual damages.

57.     Plaintiff also seeks an order enjoining L.L. Bean's unfair and/or deceptive acts or practices, and attorneys' fees, costs, and any other just and proper relief available under M.G.L., c. 93A.

58.     On March 14, 2018, Plaintiff sent to L.L. Bean a written demand for relief pursuant to M. G. L., c. 93A, § 9(3).

59.     L.L. Bean failed to make a reasonable offer of relief in response to the demand.

## COUNT IV
### Violation of Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*
### (On behalf of the Nationwide Class)

60.     Plaintiff realleges and incorporates by reference paragraphs 1–34 as if fully set forth herein.

61.     Plaintiff is a "consumer" within the meaning of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301(3).

62. Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)–(5).

63. L.L. Bean sells "consumer products" within the meaning of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301(1).

64. 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer that is damaged by the failure of a warrantor to comply with a written warranty.

65. Defendant's representations as described herein that Plaintiff and other Class members would be able to return merchandise for any reason at any time is a written warranty within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

66. The Guarantee formed a basis of the bargain.

67. Defendant failed to comply with the Guarantee as described herein. On February 9, 2018, L.L. Bean announced that it would refuse to honor the Guarantee.

68. Defendant knew, or should have known, that its misrepresentations regarding the Guarantee were material and formed the basis of the bargain between Plaintiff and the Class and Defendant, yet it proceeded with its decision to renounce the Guarantee.

69. Plaintiff and Class members were damaged as a result of Defendant's breach of its written warranty, and they were deprived of their benefit of the bargain.

**COUNT V**
**Declaratory Relief**
**(On behalf of the Nationwide Class)**

70. Plaintiff realleges and incorporates by reference paragraphs 1–34 as if fully set forth herein.

71. Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

72.     Defendant marketed, distributed, and sold its products with the Guarantee, as described herein.

73.     On February 9, 2018, L.L. Bean publicly announced that it was no longer honoring the Guarantee and was instead imposing a new limited warranty subject to numerous exceptions and qualifications.

74.     As a result of L.L. Bean's conduct, Plaintiff and the other Class members who purchased L.L. Bean products and the Guarantee are deprived of the benefit of the bargain. Accordingly, Plaintiff seeks entry of the following declarations: (1) L.L. Bean's February 9, 2018 announcement that it would no longer honor the Guarantee with no end date or questions asked constitutes a violation of the law and a breach of warranty; (2) L.L. Bean must continue to honor the warranty with no end date and no questions asked as to goods purchased prior to February 9, 2018; and (3) L.L. Bean must provide the best notice practicable under the circumstances designed to reach past and future L.L. Bean customers, and corrective advertising regarding the changes to its warranty, including a prominent one-page notification in its catalog for each edition distributed prior to February 9, 2019, and notification to each customer at the point of sale that products may be returned within one year for a refund, subject to special conditions, and, after one year, the item may be returned only if it is defective due to materials or craftsmanship, and that proof of purchase to honor the refund is required for any return.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in his favor and against defendant L.L. Bean as follows:

A.     Certifying the Classes under Federal Rule of Civil Procedure 23;

B.      Appointing Plaintiff as Class Representative and Plaintiff's Counsel as Class Counsel;

C.      Awarding Plaintiff and the members of the Classes damages and/or equitable relief as appropriate;

D.      Awarding Plaintiff and the Classes declaratory and injunctive relief;

E.      Awarding Plaintiff and the members of the Classes restitution and disgorgement;

F.      Imposing a constructive trust for the benefit of Plaintiff and the members of the Classes on the unjustly retained benefits conferred by Plaintiff and the other members of the Classes upon L.L. Bean;

G.      Awarding Plaintiff and the Classes reasonable attorneys' fees, costs, and expenses; and

H.      Granting such other relief as the Court deems just and appropriate.

## JURY TRIAL DEMAND

Plaintiff, individually and on behalf of all others similarly situated, hereby requests a trial by jury on all claims so triable.


Dated: April 24, 2018                    Respectfully submitted,


                                         /s/ David Pastor
                                         David Pastor (BBO # 391000)
                                         **PASTOR LAW OFFICE**
                                         63 Atlantic Avenue
                                         3rd Floor
                                         Boston, MA 02110
                                         (617) 742-9700 (p)
                                         (617) 742-9701 (f)
                                         dpastor@pastorlawoffice.com

Ben Barnow
Erich P. Schork
Jeffrey Blake
Anthony Parkhill
**BARNOW AND ASSOCIATES, P.C.**
1 North LaSalle Street, Suite 4600
Chicago, Illinois 60602
(312) 621-2000 (p)
(312) 641-5504 (f)
b.barnow@barnowlaw.com
e.schork@barnowlaw.com
j.blake@barnowlaw.com
aparkhill@barnowlaw.com

Janine Pollack
Michael M. Liskow
Correy A. Kamin
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
270 Madison Avenue
New York, New York 10016
(212) 545-4600 (p)
(212) 686-0114 (f)
pollack@whafh.com
liskow@whafh.com
kamin@whafh.com

*Attorneys for Plaintiff*